1655 David Anguiano v. Klein Tools,Inc Good morning, Your Honor. Good morning. Please, the court. Counsel, my name is Jacob Anusha. I represent the appellant, David Anguiano. I'm here today to ask, Your Honor, as I was thinking of the first decision of the commission in the circuit court, which reversed the award given by arbitrator Kirk Carlson, a commission decision which Judge Kubashek at the circuit court found to be puzzling, confusing, vague, incomplete, and somewhat disconcerting. A commission decision whose reasoning the circuit court was uncomfortable adopting wholesale. Nevertheless, the circuit court concluded that appellant couldn't point to sufficient evidence in the record, proved that the commission's finding was against the manifest way of the evidence. It affirmed it. I'm here to tell you why that was wrong. The commission based its reversal of arbitrator Kirk Carlson's finding of repetitive trauma injury to Mr. Anguiano's lumbar spine on two bases. One, failure to allege specific mechanism of injury, failure to indicate what act or movement he was performing at the time of injury. And they called the description too vague to be compensable. At the outset, I'd like to point out that this was a repetitive trauma injury. The appellant was working for client tools for 20 years in a repetitive trauma type injury. Failure to allege specific mechanism of injury on manifestation date does not preclude the finding of accident after Bellwood. Well, we're talking about specific procedures. What do you have to make of the commission? The commission obviously concluded that in this case the claimant gave no testimony regarding the quote-unquote repetitive nature of his specific job. Did he testify as to the repetitive nature? He did. He testified that he was a machine operator for 20 years and that every day he would work in a machine. He would pick up parts and move them. And in the medical records is where the repetitive nature of his tasks is bolstered. In the athletical records, the physical therapy, it's 338 of the record. They note that the primary aggravating factors were activities including frequently performing lifts up to 30 pounds, pushing skids, prolonged standing. More directly, he had several IMEs, but one IME with a Dr. Johnson. The report is page 293 of the record. He reported to Dr. Johnson he does a lot of repetitive tasks at work, including standing at different machines, performing upper extremity twisting while moving objects from place to place. Upon hearing that, the doctor put in his note that appellant's employment certainly would or could aggravate an underlying condition and that it was a testament to his desire to continue working that he hadn't allowed himself to be taken off work. So not only in the IME report, not only in the physical therapy records, but there was also testimony what repetitive tasks he did. I think the problem is the commission found that reviewing all of the records and testimony established that complainants didn't establish work duties as including standing, lifting, and pulling without any indication as to the repetitive method or manner in which he performed those duties. Yes, he testified. The records say he stood at times. At times he turned. He lifted. But those are generalities. They felt that there was a lack of specificity in his testimony. So how do you respond to that? How do I respond to that? I would respond that the medical records bolster the fact that the repetitive nature of them for 20 years, and several providers, I guess the IME, Athletico, bolstered his testimony. It seemed like the commission ignored it, and that's why I would say that it's against the manifest weight of the evidence. That was a big part. Another one I'd like to point out, too, is in the circuit court decision, Judge Kubaszek seemed to hang his head on Dr. Baller's IME. In the circuit court decisions in the record 778, the circuit court noted that the IME doctor concludes that no repetitive trauma injury manifested itself on May 6, 2011. This is an incorrect recitation of the evidence, an incorrect recitation of the report. Does it really make any difference what the circuit judge said? Does it make a difference to us? We reviewed the commission's decision, not the circuit court's. Sure. No, but I think this goes to bolster the fact that the commission had no basis of finding no repetitive trauma. If you go on, the IME doctor noted that he didn't see any documentation of an injury in 2011 that affected the back, resulting in a disc herniation event. There's actually no mention of repetitive trauma or lack of in or in his duties in the IME report, saying that he did herniate his disc on that day, the manifestation date which we're alleging, and that aligns perfectly with what our recitation in the case is. The disc was herniated in 2008 already as seen on a previous MRI. He was asymptomatic to the point where he was able to work. And he begins seeking medical treatment and then was off. They don't have an opinion saying that his repetitive tests are not related. They have an opinion saying that he didn't herniate his disc or there's no evidence that he herniated his disc on this date, May 6, 2011, and I agree with that. Because it was already herniated? Correct. He was already herniated. However, he was asymptomatic and able to work through it. Well, wait a minute. We know that Espinoza obviously gave an opinion that was in favor of the claimant's claim, okay? But I think you're glossing over something when you say there was no opinion. Dr. Butler's opinion was clearly that the claimant's condition was not causally related to his appointment. Isn't that what Butler said? Condition was not the result of his appointment, right? I think more specifically he was saying, it's a very short report, he said that he didn't see evidence that of a work, of a herniation event that would happen from pushing or pulling a skid on our manifestation date. And I agree with that. And the commission didn't like that. Obviously. They did. I think it's ignoring that. I agree with that as well. They rely on it saying there's no herniation on that day, but I think they're kind of missing the point that it was a repetitive trauma injury. If we're saying that it was completely fine, the herniation happened on that day, and they base their opinion on Butler's report saying he could have herniated the disc on that day at work, I agree with that. No accident. The disc was herniated. He was asymptomatic. What is his condition of ill-being that you're seeking benefits for? I'm sorry? The important question, what's his condition of ill-being that he's filing a claim for? He had a herniation L4, L5. Well, we know that. You've conceded that, right? Right. Okay. How many years ago did that show up? As we know, it was 2008. And when is the manifestation date? May 6, 2011. Okay. Condition of ill-being meaning the pain reached the point where he could have continued work and realized that the pain in his back was related to his work duties. And so you're attacking Butler's opinion by saying Butler's looking for a herniation, right? I think Butler's looking for one specific accident causing a herniation. Right. And you say the herniation existed, but it was benign and it did not. Is that what your theory is? Right. So I think Butler's missing the point. I don't think he's taking into account the repetitive nature or the theory of repetitive stress case. That's why I believe his report shouldn't necessarily lead to a finding of no repetitive trauma accident. Okay. I think we understand it. Do you have time in reply?  Okay. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. May it please the court. Counsel, I'm Paul Kroger. I'm behalf of the L.A. Client Tools. Your Honors, it's our position that the decision of the commission was correct and should be affirmed. This is what I would call a classic manifest weight case. The commission's decision indicated two reasons why they reversed the arbitrator. Number one was the vague description from the petitioner with regard to accidents. And number two was the fact that there was no solid details with regard to the medical history. So I'll address the commission's first finding, and that was the vague description. It's the same goes that doubles in the details, and the details are missing in this case. If we take a look at the summation of what the petitioner testified about his job duties at Client Tools, it was that he did stand, that he stood, he carried parts. Some of the pins weighed 30 pounds and up. He put parts in the machine. He took them out. He turned the machine off and on. He worked about 50 hours a week. But what's missing, again, is the details. We don't know how many pans did he lift in a day, how many pans did he lift in a week. What were the range of pans? When he moved a pan, how did he twist? How heavy were the pans, anything like that? Excuse me? How heavy were the pans or anything like that? Correct. We don't have, you know, I bent down, I moved him from table. All these classic elements that go into what I would say is a recipe of a repetitive trauma claim. So I would submit the commission was correct in finding that we were missing those details and his description was too vague for them to make a finding of repetitive trauma. And then we turn to the commission's other point about lack of detailed medical records. And, again, they were spot on. If we take a look at the testimony of the petitioner's own expert and treating physician, Dr. Espinosa, his history was that the petitioner was injured pushing a heavy skid, and he did do an opinion on causation. But there was no details, again, provided to the doctor about repetitive trauma, as we sometimes see in these cases, which is a hypothetical. Doctor presumed Mr. So-and-so does A, B, C, and D. Or were you familiar with what he did during the day? How much he lifted weights? All those things. Even if we look at some of the cases cited, which really go more for manifestation dates, but if we take a look at Peoria Bellwater, we take a look at Williams, if we take a look at the level of detail that was offered in those cases, that's what's missing from this case. And I would submit that the commission had the right and it's within their prerogatives to weigh all the testimony, to look at these factors, and to make the decision the way they did. There's nothing about this decision that indicates it was against a manifest way of the evidence, and we request the decision be affirmed. Okay. Thank you, Counsel. Counsel, you may reply. Just very briefly, Your Honors. As far as the weight of the pans, and that's the medical records, page 338 of the record, the pans are up to 30 pounds. I would submit that it could have been a more specific shirt. I believe it was specific enough for two doctors, Espinosa and an IME doctor, to opine that his work activities caused and or contributed to aggravating a condition in his back. That's why I think it's against the evidence. Thank you. Very good. Thank you, Counsel, both for your arguments in this matter. It will be taken under advisement. The written disposition shall issue.